IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| IN RE: SNOWFLAKE, INC., DATA SECURITY BREACH LITIGATION<br><br>This Document Relates only to Defendant: THE NEIMAN MARCUS GROUP, LLC | CASE No.: 2:24-MD-3126-BMM |

**PLAINTIFFS' RESPONSE TO OBJECTION OF BRUCE ISACSON**

Plaintiffs[1] and Class Counsel, on behalf of themselves and the Settlement Class, respectfully respond to the September 9, 2025 letter objection of Bruce Isacson ("Isacson"), a copy of which is attached as **Exhibit 1**.

The deadline to object to the Settlement was September 23, 2025. Out of 16,147,008 Settlement Class Members, Isacson is the only objector to the Settlement. Other than that, the Settlement Class unanimously supports the Settlement. *See Tanner v. Plavan Commer. Fueling, Inc.*, No. 3:24-cv-1341-BTM-JLB, 2025 WL 2231304, at *5 (S.D. Cal. Aug. 4, 2025) (absence of a large number of objections raises strong presumption settlement terms are favorable). Only 51 have opted-out.

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached to the Motion for Final Approval as *Exhibit A*. [Doc. 544-1].

1

Like his prior objection, which was addressed in the Motion for Final Approval [Doc. 544 at 24-25], Isacson's subsequent letter is procedurally deficient and substantively wrong. The September 9 objection fails to comply with the Preliminary Approval Order's objection requirements outlined in paragraph 18.d.-j. and 19. [Doc. 437 at ¶¶18-20]. Therefore, his objections to the Settlement should not be considered and summarily overruled.

If the Court nevertheless considers Isacson's stated grounds, although he may disagree, the Settlement is fair, reasonable, and adequate given the facts and Personal Information involved in the Data Incident. As Plaintiffs previously pointed out for his first objection, the best course for anyone who does not agree with a settlement's terms is to opt-out and pursue the claim individually. *See Dennis v. Kellogg Co.*, 2013 WL 6055326, at *5 (S.D. Cal. Nov. 14, 2013) (overruling objection arguing objector should receive greater compensation because "[objector]'s dissatisfaction based on circumstances unique to her and her family cannot undermine the overall fairness of the settlement" given significant litigation risks). Isacson did not exercise that right. Instead, he seeks to derail the Settlement without justification.

Isacson made no attempt to contact Class Counsel using the information contained in the Long Form Notice before his first objection to ask questions about the Settlement or to better understand its valuable benefits. Instead, as he wrote in his September 9 letter, he submitted his objection the day after receiving an Email

Notice. Isacson then oddly objects that Class Counsel did not reach out to him *before* he objected. Naturally, until a Settlement Class Member has received Notice of the Settlement and voices an objection, Class Counsel would not be on notice to communicate about that objection.

Before filing the Motion for Final Approval, Class Counsel timely made reasonable attempts to speak with Isacson to further educate him about the Settlement's terms and the Settlement Class Member Benefits he could claim. This could have resulted in Isacson acting to timely opt-out and withdraw his objection.

Isacson attached his email exchange with Class Counsel to his September 9 letter, which confirms he refused Class Counsel's efforts to speak with him via telephone and unreasonably insisted that they only communicate by email. *See* Ex. 1. Even then, he never wrote Class Counsel with any questions when they asked him to do so to engage in meaningful communication about the Settlement. *Id.* Instead, he submitted his September 9 letter. As a result, he waived his right to opt-out. He also did not submit a Claim Form.

Isacson's disagreement with Defendant not admitting wrongdoing overlooks that Defendant has taken financial responsibility for the Data Incident via the Settlement Class Member Benefits. Every Settlement Class Members may elect two years of Credit Monitoring to protect against future harm and are reasonably required to show documented losses related to the Data Incident to receive a payment, instead

of just claiming $2,500.00 with no proof of harm. Those seeking a payment have submitted their Claim Forms. Given the sensitivity level of the Personal Information, the recovery is excellent. Isacson could have preserved his individual right to claim a higher amount in separate litigation via an opt-out request, a right he failed to exercise. That decision is no reason to derail the Settlement supported by the Settlement Class.

The objection indicates Isacson does not understand that the Settlement Fund is non-reversionary. The entirety of the Settlement Fund will be exhausted by paying Valid Claims from the Net Settlement Fund, after the payment of (i) Settlement Administration Costs, (ii) reasonable attorneys' fees and costs awarded to Class Counsel, and (iii) reasonable Service Awards to the Class Representatives. [Doc. 544-1 at ¶¶ 66, 71, 72]. There is full transparency on that subject in the Agreement, Notices, and Settlement Website. Only if funds remain from any uncashed checks issued to Settlement Class Members with Valid Claims will those funds go to a *cy pres* recipient, as is standard in class action settlements like this one. *Id.* at ¶ 115. Therefore, Isacson's concern that no part of the Settlement Fund go back to Defendant is a term of the Agreement at the insistence of Plaintiffs and Class Counsel.

Although Isacson may not see value in claiming the Credit Monitoring offered in the Settlement, Settlement Class Members disagree and have elected it on their

Claim Forms. This is valuable benefit and goes beyond just sending the free credit alerts Isacson claims he already receives. The "Identify Defense Plus" Credit Monitoring offered by the Settlement "includes comprehensive dark web monitoring, high risk transaction monitoring, with real time alerts, security freeze, and *$1 million in insurance coverage*. The retail cost of the Credit Monitoring is $108.00 per year." [Doc. 544-1 at ¶ 76.b. (emphasis added)].

Isacson's disagreement with the attorneys' fees and costs requested is not shared by any other Settlement Class Member. Class Counsel have justified the reasonableness of the amounts sought in the Application for Attorneys' Fees, Costs, and Service Awards. [Doc. 544 at 27-41].

Thus, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class Members, overrule Isacson's objections, and grant Final Approval.

Dated: October 17, 2025.                    Respectfully submitted,

/s/ John Heenan
John Heenan
**Heenan & Cook, PLLC**
1631 Zimmerman Trail
Billings, MT 59102
Tel. 406.839.9091
john@lawmontana.com

*Class Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served via email via the CM/ECF system on all counsel of record on this 17th day of October, 2025.

/s/ John Heenan
John Heenan